IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:16-cr 2 |
| | : | Walter H. Rice |
| v. | : | |
| | : | |
| REBEKAH FAIRCHILD | : | **INFORMATION** |
| | : | |
| | : | 18 U.S.C. § 371 |
| Defendant | : | |

The United States Attorney for the Southern District of Ohio charges:

**BACKGROUND**

At all times relevant to this Information:

1. In or about August 2009, WILLIAM APOSTELOS formed Midwest Green Resources, LLC ("Midwest Green"). Midwest Green was a Dayton, Ohio-based investment and asset management company that was owned and operated by WILLIAM APOSTELOS. Midwest Green maintained bank accounts at PNC Bank, JP Morgan Chase and Key Bank. Midwest Green's bank accounts were intended for and did receive investor funds from WILLIAM APOSTELOS' clients.

2. In or about October 2009, WILLIAM APOSTELOS formed WMA Enterprises, LLC ("WMA"). WMA was a Dayton, Ohio-based investment and real estate asset management company that was owned and operated by WILLIAM APOSTELOS. WMA maintained bank accounts at PNC Bank, JP Morgan Chase and Key Bank. WMA's bank accounts were intended for and did receive investor funds from William Apostelos' clients. Defendant **REBEKAH FAIRCHILD (a/k/a REBA FAIRCHILD)** was responsible for paying WILLIAM

APOSTELOS' and CONNIE APOSTELOS' (a/k/a CONNIE COLEMAN) credit card bills and other personal expenses using investors' funds from WMA's bank accounts.

3. Coleman Capital, Inc. ("Coleman Capital") was an Ohio corporation that was established in or about May 2008 for the purpose of various business and administrative consulting activities and services. CONNIE APOSTELOS was the authorized representative of Coleman Capital. In or about November 2013, Coleman Capital became a registered agent for Midwest Green. Coleman Capital maintained bank accounts at PNC Bank and Key Bank.

4. Through Coleman Capital, CONNIE APOSTELOS hired and managed the employees who handled the day-to-day administrative work of WILLIAM APOSTELOS' purported investment companies, including Midwest Green and WMA. Coleman Capital was also responsible, in part, for managing the day-to-day operations of Midwest Green and WMA, including handling their accounting services, payroll, landscaping, utility payments and real estate taxes. Coleman Capital's bank accounts were typically funded by transfers from WMA's bank accounts. Coleman Capital occasionally paid for the following: (a) WILLIAM APOSTELOS' and CONNIE APOSTELOS' personal expenses; (b) expenses associated with WILLIAM APOSTELOS' and CONNIE APOSTELOS' rental properties; and (c) race horse expenses associated with Silver Bridle Racing, Inc. ("Silver Bridle").

5. In or about August 2011, CONNIE APOSTELOS formed Silver Bridle, an Ohio corporation involved in the thoroughbred horse racing business. Silver Bridle maintained a bank account at PNC Bank and U.S. Bank. Through Silver Bridle, CONNIE APOSTELOS raised and raced thoroughbred horses, including the horses "Baryshnikov" and "Shannon Nicole."

6. In or about April 2005, Apostelos Enterprises, Inc. ("Apostelos Enterprises"), an Ohio corporation, was established for the purpose of residential construction and remodeling.

Apostelos Enterprises' registered agents were WILLIAM APOSTELOS and CONNIE APOSTELOS. Apostelos Enterprise maintained bank accounts at PNC Bank and JP Morgan Chase. Apostelos Enterprises' bank accounts were typically funded by transfers from WMA's bank accounts. Apostelos Enterprises occasionally paid for the following: (a) WILLIAM APOSTELOS' and CONNIE APOSTELOS' personal expenses; and (b) expenses associated with WILLIAM APOSTELOS' and CONNIE APOSTELOS' rental properties.

7. Beginning in or about September 2011 and continuing until approximately October 2014, Midwest Green, WMA, Coleman Capital and Apostelos Enterprises operated out of 35 Commercial Way, Springboro, Ohio, which is located within the Southern District of Ohio. Prior to September 2011, each of these entities operated out of 1709 Woodman Drive, Kettering, Ohio, which is located within the Southern District of Ohio.

8. By at least August 2009 and continuing until October 2014, defendant **REBEKAH FAIRCHILD** was employed at Midwest Green and WMA through Coleman Capital. She reported directly to WILLIAM APOSTELOS and CONNIE APOSTELOS. Defendant **REBEKAH FAIRCHILD's** responsibilities included, but were not limited to: (a) serving as a receptionist; (b) handling accounting/bookkeeping (*e.g.*, maintaining QuickBooks files) and banking activities (deposits and withdrawals) for WMA, Midwest Green and Coleman Capital beginning not later than April 2013; and (c) interfacing directly with individuals who had invested with WILLIAM APOSTELOS through WMA and/or Midwest Green.

9. Beginning in or about June 2010 and continuing until at least October 2014, defendant **REBHEKAH FAIRCHILD** was listed as a signatory on certain WMA, Midwest Green, Coleman Capital and Apostelos Enterprises bank accounts at Key Bank, JPMorgan Chase

and/or PNC Bank, and had the authority to withdraw and transfer funds from and between these accounts at the direction of WILLIAM APOSTELOS and CONNIE APOSTELOS.

10. On behalf and at the direction of WILLIAM APOSTELOS and/or CONNIE APOSTELOS, defendant **REBEKAH FAIRCHILD** would, among other activities, advise WILLIAM APOSTELOS' investor-clients regarding the status of their accounts, disburse and deposit funds from investors, notarize investor promissory notes on behalf of WILLIAM APOSTELOS, and schedule and attend meetings with investors.

11. TD Ameritrade is an online broker based in Omaha, Nebraska that offers its customers a variety of investment options, including common and preferred stocks, futures, exchange-traded funds, options trades, mutual funds, fixed income investments, margin lending and cash management services.

12. Kingdom Trust, Millennium Trust and PENSCO Trust Company ("PENSCO") are regulated, self-directed Investment Retirement Accounts ("IRA") custodians (or trustees). As IRA custodians (or trustees), none of these entities offer any tax, legal or investment advice to their account holders.

## COUNT 1
## [18 U.S.C. § 371]

13. Paragraphs 1 through 12 are re-alleged and incorporated by reference as though fully set forth herein.

14. Beginning on an exact date unknown, but by at least 2009, and continuing until at least October 2014, in the Southern District of Ohio and elsewhere, the defendant **REBEKAH FAIRCHILD** and co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, and others known and unknown to the United States Attorney, knowingly combined, conspired, confederated and agreed to commit certain offenses against the United States, that is: to devise

and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

15. It was the purpose of the conspiracy that defendant **REBEKAH FAIRCHILD**, co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, and other co-conspirators, who are both known and unknown to the United States Attorney, solicited and obtained tens of millions of dollars of investors' funds through false pretenses, representations and promises, all in order to economically benefit themselves and others through the payment of fees, wages, bonuses, and other monies, and through the unauthorized and fraudulent diversion, misuse and misappropriation of investor funds.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which defendant **REBEKAH FAIRCHILD** and her co-conspirators, who are both known and unknown to the United States Attorney, sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

16. It was part of the conspiracy that co-conspirator WILLIAM APOSTELOS and others would induce individuals from within the Southern District of Ohio and elsewhere to invest with co-conspirator WILLIAM APOSTELOS through his purported investment companies, including WMA and Midwest Green. Between approximately January 2010 and October 2014, over 450 individuals invested more than $70 million with co-conspirators

WILLIAM APOSTELOS, CONNIE APOSTELOS and others through WMA and Midwest Green.

17. It was further part of the conspiracy that co-conspirator WILLIAM APOSTELOS would solicit investors by falsely representing that he had a degree in mathematics from Wright State University and was a registered securities broker. Although co-conspirator WILLIAM APOSTELOS briefly attended college during the late 1970s and 1980s, he never graduated from Wright State University. Nor was WILLIAM APOSTELOS ever licensed to sell securities. In addition to directly soliciting investors, individuals were also referred to co-conspirator WILLIAM APOSTELOS by word-of-mouth or through recruiters hired by WILLIAM APOSTELOS.

18. It was further part of the conspiracy that co-conspirator WILLIAM APOSTELOS and others would falsely and misleadingly represent the nature of his investment strategies, namely that he would falsely or misleadingly advise his clients that their monies were being invested through various investment vehicles, including but not limited to: financing land deals in multiple states; purchasing stocks and precious metals, including gold and silver; financing bridge loans for small businesses or farms; making hard money loans; or financing the establishment of a bank.

19. It was further part of the conspiracy that defendant **REBEKAH FAIRCHILD**, and co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, and others induced individuals to invest with WILLIAM APOSTELOS by preparing and causing to be prepared promissory notes for the investor-clients that purported to promise extraordinary rates of returns (*i.e.*, interest payments) ranging from 10% to 60% that would be typically due 60 to 90 days after

the investment was made, knowing that such interest payments would come from funds obtained from other clients.

20. It was further part of the conspiracy that co-conspirator WILLIAM APOSTELOS and others would falsely and misleadingly represent to certain investors that their monies had been invested via TD Ameritrade brokerage accounts. These investors received a username, password and "handle," and were directed to a website where they could purportedly access their accounts and track their investments. In actuality, these accounts were not legitimate TD Ameritrade accounts, but rather Investools' training accounts. Investools is an educational product offered by TD Ameritrade to help would-be investors develop the skills and strategies necessary to manage stock portfolios. As a consequence, these investors only had "paper money" accounts meaning that none of these accounts actually contained investor funds.

21. It was further part of the conspiracy that WILLIAM APOSTELOS and others would induce investors to convert their existing legitimate retirement accounts, *i.e.*, 401Ks or IRAs, into "self-directed IRAs" that would allow the investors to make "alternative investments," namely investments in Midwest Green and WMA. Co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, and others orchestrated the transfer of investment funds to a qualified trustee, or custodian, including Kingdom Trust, Millennium Trust and PENSCO, by completing the necessary paperwork for the investor. After the investor funds were transferred to one of these qualified trustees, the investor would have to elect to pursue a self-directed IRA, which would then permit the investor to invest in WMA and/or Midwest Green. The investors' funds s were then sent (either by wire transfer or check) from the trustee (Kingdom Trust, Millennium Trust or PENSCO) and deposited into WMA's and/or Midwest Green's bank accounts. In return, co-conspirators WILLIAM APOSTELOS and CONNIE

APOSTELOS, and others provided promissory notes and fraudulent account statements to the trust companies. By encouraging certain investors to establish self-directed IRAs, co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS and others intentionally misled investors to believe that these third-party custodians maintained control over and effectively safeguarded the investors' funds from misappropriation. In other words, co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS and others failed to disclose that they used these entities simply as a means to gain direct access to the investors' funds that did not remain at the third-party custodians but actually ended up in the control of WMA and/or Midwest Green.

22. It was further part of the conspiracy that co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, and others working at their direction, including defendant **REBEKAH FAIRCHILD**, diverted and misappropriated the funds invested with WMA and Midwest Green by using investments made by later investors to make payments to earlier investors by falsely representing that these payments represented a return of their principal and/or interest generated by their investments with WMA and/or Midwest Green. In other words, co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS and others known to the United States Attorney intentionally diverted investor money for illegal and improper purposes, including, but not limited to the operation of a "Ponzi" scheme.

23. It was further part of the conspiracy that co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, and others working at their direction, including defendant **REBEKAH FAIRCHILD**, diverted and misappropriated the funds invested with WMA and Midwest Green to their own personal use and benefit, or to finance and operate

various personal business ventures, including, but not limited to, Coleman Capital and Silver Bridle, without the approval or consent of investors.

24. It was further part of the conspiracy that co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, and others would conceal from investors the true operations and financial condition of WMA and Midwest Green, as well as the actual manner in which investors' funds were being used and the true nature and value of their investments. Working at the direction of co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS, defendant **REBEKAH FAIRCHILD** and others provided false and fraudulent account statements to those who had invested with WILLIAM APOSTELOS through WMA and/or Midwest Green. These false and fraudulent statements misrepresented the status and growth of the clients' investments.

25. It was further part of the conspiracy that co-conspirator WILLIAM APOSTELOS would provide a "daily excuse" and direct defendant **REBEKAH FAIRCHILD** and others to mislead investors about his whereabouts and availability when investors attempted to contact him about their investments. As co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS fell behind on purported interest payments to those who had invested with WMA and Midwest Green, and became increasingly unable to repay investors' principal, co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS instructed their employees, including defendant **REBEKAH FAIRCHILD**, to provide investors with false and fraudulent excuses for non-payment. For instance, co-conspirators WILLIAM APOSTELOS and CONNIE APOSTELOS caused **REBEKAH FAIRCHILD** to falsely advise investors, among other things, that: (a) WMA's bank accounts had been hacked; (b) a bank had mistakenly failed to wire or issue the investor's payment; (c) co-conspirator WILLIAM APOSTELOS was travelling for

business and was unavailable to address the non-payment problem (even though WILLIAM APOSTELOS was often simply hiding in the office); or (d) the deal the client had invested in was temporarily on hold.

26. As a result of the above-described scheme, investors collectively lost in excess of $30 million.

OVERT ACT IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one of the conspirators committed and caused to be committed, in the Southern District of Ohio and elsewhere, at least the following overt act, among others:

27. On or about October 22, 2014, defendant **REBEKAH FAIRCHILD** caused $39,000 to be wired from WMA's PNC Bank Account #X8143 to P.K.'s bank account. P.K. was an investor of WMA. **REBEKAH FAIRCHILD** knew that these funds were funds from another investor rather than P.K's own funds or a return on P.K.'s purported investment.

CARTER M. STEWART
United States Attorney

*Laura I. Clemmens*/E.G.
LAURA I. CLEMMENS
Chief, Dayton Branch