IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATE OF AMERICA | CASE NO:  3:16-CR-0002 |
| -VS- | JUDGE THOMAS M. ROSE |
| REBEKAH FAIRCHILD | SENTENCING MEMORANDUM |

_____

Rebekah Fairchild, by and through counsel Michael R. Booher, hereby submits the following Memorandum to assist the Court in fashioning an appropriate and reasonable sentence.  Defendant respectfully submits that a sentence of probation will achieve the purposes and principals of sentencings as set forth in the United States Sentencing Guidelines, and, accordingly, moves this Court for such a sentence.  In support of this Motion, Defendant Rebekah Fairchild states the following.

BACKGROUND

Rebekah (Reba) Fairchild is 54 years of age.  She was born in Dayton, Ohio and is a lifelong resident of the area, excepting a short period when she lived in Kentucky.  She has absolutely no prior criminal history, with the exception of minor traffic offenses, such as a speeding offense. This is her first significant contact with the criminal justice system.

Reba had a difficult childhood.  Her mother was chronically ill from a variety of diseases, including MS, and was bedridden for a large part of her youth.  Her father was emotionally neglectful, and Reba became estranged from both of her parents after she reached the age of 21.  In more recent years, she has renewed her relationship with both of her (now divorced) parents.  She sees her mother once or twice a week, and sees her father occasionally.  Both parents are aged, and in poor health, suffering from multiple chronic illnesses.

Rebekah was married in 1998 to Rick Fairchild.  She had no children with him, and he unfortunately passed away from cancer in 2001.  Subsequently, she has had two children, both of whom are now adults.  Rebekah (Becky) is also charged in a related case.  Carol, her other daughter, is 25, and lives in Dayton.  Reba is close to both of her children, and to her 3 grandchildren.

Reba has some college, but does not possess a college degree.  She began to work for her brother's companies sometime around August 2005.  Initially, she was a

receptionist/secretary. There was another individual who served as a bookkeeper, who then left the employ of Apostelos Enterprises. Beginning sometime in 2011, Reba became to gradually take over the bookkeeping and banking activities of her brother's various companies. This included, as set forth in the presentence investigation report, maintaining Quickbooks accounts, and various banking activities, including making deposits and withdrawals. She was eventually given check signing authority, and from sometime in 2011 until October 2014, she wrote a number of checks and otherwise completed transactions, all at the behest of Bill and/or Connie Apostelos.

At this time, Rebekah Fairchild had no knowledge of the illegal and fraudulent nature of her brother's various enterprises. It should be noted that she is not formally trained as an accountant, and essentially learned her job by doing it. She took direction directly from William Apostelos, and occasionally from his wife Connie.

Eventually, over the course of calendar year 2014, it became obvious to Reba that something was amiss. Her brother gave her an increasing number of excuses to give to clients, there were obvious cash flow discrepancies, and other signs. By August, 2014, the Defendant was aware of the fact that the companies did not have legitimate investments, and that her brother and his wife were involved in illegal and fraudulent activity.

At that point, Ms. Fairchild was at a loss as to what to do. She was very upset, (and this concern was witnessed by a number of people that the government's investigators contacted), but did not feel that she was capable of taking any action. She was berated and browbeaten by Connie Apostelos on a daily basis. She continued to work there until the operation was raided in October, 2014.

It should be noted that Rebekah Fairchild was a very low level employee in the Apostelos operation. She worked primarily in the basement, and aside from telephone contact, had very little direct contact with clients. While tens of millions of dollars went through the company, Reba saw none of it personally. She was paid a nominal salary at the rate of $17.00 per hour. At no time did she ever realize any of the ill-gotten gains of the scheme of her brother. While there is an agreed restitution figure, that number does not represent any "loot" from illegal activities, as will be explained below.

The FBI conducted a raid, pursuant to search warrant, on October 29, 2014. Within weeks of the raid, and seizure of all records, Reba made the decision to take responsibility and to cooperate with the government. Within the first few weeks, she met with the United State attorneys and FBI agents to answer questions and give information. She then met with agents of the government on two subsequent occasions, for a total of approximately 9-10 hours. During this time she answered questions from the U.S. attorneys, FBI agents, U.S. Postal Service, SEC agents, and others. She has given the government all of the cooperation in her power. The agreement with the government included truthfully giving any information helpful to the government, and testifying against her brother and sister in law if necessary. Testimony has not been necessary as both William and Connie Apostelos have now entered guilty pleas in their related cases.

PHYSICAL AND EMOTIONAL HEALTH OF DEFENDANT

Reba Fairchild has a number of physical ailments of an ongoing nature. She suffers from anemia, asthma, hypothyroidism, low blood pressure, and a congenital heart deformity. She has had surgery to remove her gall bladder, appendix, and a hysterectomy. She had bariatric surgery in 2011. More importantly, she has suffered for years from a congenital spinal stenosis. It has caused her great pain, and ultimately she had surgery for this condition in November, 2013, and November 2015. She continues to have chronic back pain, a condition that is likely permanent.

Ms. Fairchild has been diagnosed with PTSD and major depressive disorder. Prior to the instant offense she had engaged in therapy for periods of time, dependent upon whether her health insurance would pay for the treatment.

Subsequent to being charged in this case, this Defendant felt she could benefit from mental health treatment. She was referred by Pretrial Services into the CAM program. She was assessed by CAM in March 2016, and given the diagnosis of PTSD and major depressive disorder at that time. She has engaged in therapy for the last year and has made significant progress in dealing with her issues. She has, accordingly to her therapist, made progress in recognizing her role in her current situation, as well as developing tools to use in her life going forward.

EMPLOYMENT

Reba is currently employed at Flowerama, which she has worked for the last 2 ½ years. She makes $8.10/hour. Additionally, she draws Social Security Disability for her back problems, in the amount of $979.00/month.

GUIDELINES FOR FASHIONING A REASONABLE SENTENCE

Chapter 18 U.S.C. § 3553(b), directs the Court to impose a sentence that is "sufficient, but not greater than necessary," to fulfill the four sentencing purposes established within that chapter. These four purposes are:

   a) retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment").
   b) deterrence;
   c) incapacitation, and
   d) rehabilitation.

In fashioning an appropriate sentence for Rebekah Fairchild, the court is authorized to impose a non-guideline sentence. *Rita v. United States,* 551 U.S. 338. The Court should consider all types of available sentences. 18 U.S.C. §3553(a)(3). A sentence of imprisonment is not a "just "sentence" is if is greater than necessary, on balance, when

considering the need to accomplish all of the sentencing goals together.  See 18 U.S.C. § 3553(a).

## 18 U.S.C. § 3553 ANALYSIS

A) Retribution. Reba has clearly accepted responsibility for her part in her brother's scheme.  She made, at an early stage of the proceedings, a conscious decision to cooperate with the government and has given it all of the assistance in her power.  Furthermore, she was not motivated by malice or greed.  Her fault in this case lies less with the things she did, than with the things she failed to do, to extricate herself at the time when she realized what she was involved in.  She did not benefit materially from the crime, and has lost a great deal financially and otherwise.  Clearly, this is not a case where society has a great need to punish this defendant.
B) Deterrence. Given the lack of prior record of Ms. Fairchild, her genuine remorse, and her behavior over the last 2 years while this case is pending, it would seem that deterrence is simply not an issue.  This Court would be hard pressed to find a Defendant less likely to reoffend than Rebekah Fairchild.  This event in her life will never be repeated.
C) Incapacitation.  This was a nonviolent offense in which my client played a subordinate role.  She is clearly not a danger to society.  There is simply no need to incarcerate her to protect the public.
D) Rehabilitation.  Reba got involved in this criminal enterprise for several reasons, none of which shows a high degree of criminal intent.  Firstly, she was working for her brother simply because she needed a job.  Secondly, she allowed herself to be controlled by Bill Apostelos and Connie Apostelos because of her willingness to be helpful, to enable others to get what they wanted, and because of her own fragile sense of well-being.  This is a person who had always tried to help others, who has been loyal to family, who has selflessly sacrificed for others.  In this case, her willingness to serve her brother and sister in law was terribly misguided.  Since the inception of this case, she has actively sought help.  She has attended counselling at CAM, and has developed a different outlook on life and her role in it.  She has actively participated in her own rehabilitation while this case has been pending.  The most reasonable result would be for Reba to continue her rehabilitation in the community while on probation.

## NONBINDING GUIDELINE SEBTENCE CALCULATION

The Defendant pled to one count of a violation of 18 U.S.C § 371.  As such, the maximum term of imprisonment is 5 years.
The Base offense level is 6.     6
The parties have agreed that, during the time the Defendant was aware of the conspiracy, there was a loss of between $1,500,000 and $3,500,000.  This is an increase of 16 levels.
   +16
The parties have further agreed to an increase of 2 levels for an offense involving more

than 10 victims.                                                                                               +2
The parties have agreed that Ms. Fairchild played a minor role in the fraudulent scheme, compared to the principal, and as such, a 2 point reduction is warranted.          -2
The Defendant accepted responsibility for the offense, and as such, a 2 point reduction is warranted.                                                                                                    -2

The parties have initially agreed that the Defendant has provided assistance to the government and as such is entitled to a 1 point reduction.                                      -1

TOTAL OFFENSE LEVEL                                                                      19

This Defendant has no criminal history; therefore her criminal history category is 1.

Based upon the above, the Sentencing Table suggests a sentence of 30-37 months.

It should be noted that the government has indicated to the undersigned that they intend to file a Substantial Assistance Motion in this case. Based upon that representation, the total Offense Level would be reduced by 3-5 points. Assuming a 5 point reduction, the recommended sentence would be 15-21 months.

## FACTORS THAT WARRANT A DEPARTURE FROM THE GUIDELINES

There are a number of factors that would warrant a departure in this case.
Firstly, the 16 point increase for the amount of loss during the period that this Defendant was aware of the fraud, while stipulated by the parties, seriously overstates the role of this Defendant in that loss. The undersigned concedes and agrees that the parties agreed on that figure for fixing the offense level. But, as a practical matter, it is also beyond dispute that Ms. Fairchild never saw any of that money aside from her regular, nominal salary. Obviously, the parties had to fix the level of loss somewhere. However, in retrospect, this figure seems rather arbitrary as it relates to this Defendant.

The amount of restitution agreed upon by the parties is more instructive here. The parties have agreed that the restitution figure of this Defendant is $23,840.00. This sum is based upon the following; $5,000 was an investment that Reba herself made in the enterprise. It was returned without interest. Most of the remainder, a total of $15,940.00, was paid by William Apostelos on Reba's behalf for medical bills incurred by her as a result of her surgeries in 2011.

As per the PSI report, Reba has no assets and a negative net worth. She is currently working a minimum wage job and has no current prospects to improve her income. She will, therefore, be in servitude to the probation department for some time to repay the agreed upon sum. She does, however, have the ability to make payments if she is placed upon probation. If she is incarcerated, she has no assets with which to make payments.

The Court should consider the prior life of Ms. Fairchild. She has clearly persevered in

the face of a difficult childhood and adult life.  Her mother was essentially an invalid throughout her childhood, which forced Reba to assume the household role of her mother from a very young age.  She was emotionally neglected by her father, and only reconnected with him in the last few years.  Over the next ten years she had two children which she raised as a single parent until her marriage to Richard Fairchild, who adopted both of her daughters, only to succumb to cancer after 4 years of marriage.  As a result she and both of her daughters experienced significant mental health issues. Reba has clearly suffered a great deal of heartache and loss in her life.  Yet despite all of these difficulties and setbacks, she has lived a life free of any illegal activity until this case.

Reba's mental and physical health are both issues that the Court should take under consideration.  Ms. Fairchild suffers from a number of medical conditions, which are outlined in detail in the PSI report.  Her back problems, in particular, are chronic, and will continue to cause her pain and ongoing medical bills for the rest of her life.

At CAM, Rebekah has engaged in cognitive therapy for the last year, and has made tremendous improvement in her overall level of functioning.  She has started a new employment career, and has advanced in both pay and position. Her level of anxiety has decreased, and her depression, with appropriate medication, has improved. Her attendance at therapy has been excellent.

Most importantly, she has gained insight into her condition, and her family dynamics. She has gained insight into her prior role as an enabler of others, and as a result is far more self-confident and able to stand up for herself. As a result, her risk of reoffending is extremely low.  The CAM program is appropriate for Reba at this time, and she would benefit from continued therapy for at least another.  This is only possible is she is granted probation in this case.

For all of the foregoing reasons, the undersigned attorney for the Defendant Rebekah Fairchild respectfully suggests to the Court that a significant departure is warranted in this case.  The undersigned respectfully requests that Rebekah Fairchild be granted probation in this case, under such terms and conditions and the interests of justice shall require.

                    Respectfully submitted,

                    __/s/ Michael R. Booher_____
                    Michael R. Booher
                    Attorney for Defendant

        120 West Second St.
        Suite 1504
        Dayton, Ohio  45402
        Sup. Ct. # 0007694
        Tel. (937) 620-0749
        Fax. (937) 221-8480
        michaelbooherattorney@gmail.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was delivered to the Prosecutor the date of filing hereof by placing a copy thereof in the prosecutor's box in the Clerk of Courts office..

        __/s/ Michael R. Booher_____
        Michael R. Booher

\